## FAIRFIELD v. RURAL INDEPENDENT SCHOOL DISTS. OF ALLISON AND JACKSON.

(Circuit Court, W. D. Iowa, N. D.   October 14, 1901.)

SCHOOL DISTRICTS—SUITS AGAINST—SUBDIVISION UNDER IOWA STATUTE.

Under the statutes of Iowa authorizing the subdivision of a school-district township or an independent district into two or more independent districts, and the decisions of its supreme court upon such subdivision, the original district passes out of existence and cannot be sued, but the remedy of a creditor is by action against the several new districts, all of which must be joined in the suit. *Held*, that such a suit, brought in a federal court, must be in equity, for the reason that there is no privity of contract between plaintiff and defendants which will support an action at law, and for a further reason, where it is shown as a defense, that the indebtedness sued on, if enforced against any one of the defendants alone, will subject it to a liability far in excess of its constitutional limit of indebtedness; it being the duty of the court in such case, in the exercise of its equitable powers, to prevent such result by apportioning the liability in the first instance by its decree.

'At Law.   Action on bonds and coupons issued by the independent school district of Riverside.   Trial to the court.

The independent school district of Riverside, Lyon county, Iowa, was organized in 1872, and continued in existence until in 1885, when the territory within the district was divided into the independent school district of Allison and the independent school district of Jackson, which are now known as the "Rural Independent School Districts of Allison and Jackson." During the existence of the independent district of Riverside, it became indebted in amounts largely in excess of 5 per cent. upon the taxable property within, the district, having outstanding in 1885 bonds and judgments in large amounts, and greatly in excess of 5 per cent. upon the taxable property of the district, and was so indebted when the defendant districts were created. The plaintiff is the owner of three of the bonds of the original district, issued in 1881, amounting to $2,000, without interest;  the total sum for which judgment is prayed being $4,000.  There are also pending against the defendant districts four other cases brought upon bonds issued by the independent district of Riverside, making the total aggregate of judgments asked against the defendant districts to be the sum of about $30,000.  The principal defenses relied on are fraud in the issuance of the bonds, and the provisions of the constitution of the state of Iowa limiting the indebtedness of municipal corporations to 5 per cent. upon the taxable value of the property within the municipality.  The taxable value of the property within the district, including exemptions under the tree culture acts (Laws 1878, c. 50; Laws 1880, c. 190), for the year 1881, was $66,527, 5 per cent. of which would be $3,326.35.

Parsons & Riniker and R. H. Brown, for plaintiff.

O. J. Taylor and E. C. Roach, for defendants.

SHIRAS, District Judge (after stating the facts). The first question arising under the facts of the case is whether an action at law can be maintained against the present defendants, the rural independent school districts of Allison and Jackson, upon bonds issued by the independent school district of Riverside, or whether, in view of the facts and the nature of the issues presented by the pleadings, the proceedings should be by a bill in equity.  The supreme court of Iowa, in construing the provisions of the Code authorizing the creation of independent districts, holds that when the territory of a district township is divided into several independent districts, or the territory of an independent district is divided into several rural independent districts, the old or original district ceases to exist. Knoxville Dist. Tp. v. Liberty Independent Dist., 36 Iowa, 220;  Clay Dist. Tp. v. Buchanan Independent Dist., 63 Iowa, 188, 18 N. W. 859. It is further held that as the original district ceases to exist an action cannot be maintained against the same, but, in order to protect creditors, suit may be brought against all of the independent districts carved out of the original district.   Knoxville Nat. Bank v. Washington Independent Dist., 40 Iowa, 612;  Kennedy v. Derby Grange Independent School Dist., 48 Iowa, 189.   In the latter case it is ruled that:

"While a creditor of the district township should not be allowed to maintain an action against one alone of the independent districts, no one representing in any proper sense the original debtor, yet after the creditor has obtained judgment against them all, and the liability of all has been thus determined, we see no reason why the creditor should not be allowed to collect his judgment from one or all as best he can, leaving the judgment defendants, as the opinion in the case cited suggests, to determine in an

appropriate action their respective obligations among themselves. That a court of equity would have jurisdiction of such an action, we have no doubt."

In the case of White Oak Dist. Tp. v. Oskaloosa Dist. Tp., 52 Iowa, 73, 2 N. W. 965, in commenting on the case last cited it was said:

"It was not intimated in that case that when all the independent districts carved out of a district township are united as defendants a judgment may not be rendered in such form that it may be primarily satisfied out of the property of any one of the independent districts. * * * After the district organization has been abandoned and it has ceased to have any officers, there is no way in which a judgment against it can be enforced, if, indeed, any could be recovered. The district township by its voluntary action ought not to be allowed to embarrass the plaintiff and compel him to resort to as many separate actions as independent districts are carved out of the district township. The plaintiff has a right to enforce his debt against the whole district township. Stevenson v. Summit Dist. Tp., 35 Iowa, 462. When the district township organization has been abandoned, he can do this efficiently only by uniting the several independent districts in an action, and this we hold he may do."

In Stevenson v. Summit Dist. Tp., 35 Iowa, 462, it is said:

"The plaintiff held a valid, subsisting indebtedness against the whole district, which he had the right to enforce against the whole district; and the organization of one of the subdistricts as an independent district did not have the effect to release the district as it existed when the debt was created, or to transfer the debt from the old district to the independent one formed from a part of the old."

The effect of these decisions is to establish the rule that when an original district is divided up into two or more independent districts the original district passes out of existence and cannot be sued, but the remedy of the creditor consists in the right to bring an action against the several new districts, all of which must be united in the suit. None of the cases presented the question of the need of proceeding in equity if the facts of the particular case were such as to demand an apportionment of the liability sought to be enforced against the several independent districts, nor is there to be found in these decisions a ruling to the effect that there exists between the creditors of the original district and the independent districts carved out of the same a contract liability for the debts of the original district. Can it be said, then, that there is such a privity of contract between the plaintiff, as the owner of certain bonds issued by the independent school district of Riverside and the rural independent districts of Allison and Jackson, that the plaintiff can maintain an action at law against the latter, or is not the remedy to be sought in equity? The general rule is well settled that privity of contract is required in order to maintain an action at law. Second Nat. Bank v. Grand Lodge, 98 U. S. 123, 25 L. Ed. 75; Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, 27 L. Ed. 903; Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667. In the latter case it is held that where a mortgagor sells the mortgaged property to a third party, who agrees with the mortgagor to pay the mortgage upon the property, the mortgagee cannot maintain an action at law against the purchaser, there being no privity of contract between them, but he can in equity enforce the agreement. In fact, the plaintiff never entered into any

express contract with the defendant districts, and had no part or lot in the division of the original district into independent districts, and it is difficult to see upon what theory it can be said that there exists any such privity of contract between these parties as is necessary to support an action at law.

The more serious question, however, arises out of the nature of the issues which are presented by the pleadings in the case; the defense relied on being that of the limitation imposed by the constitution of Iowa upon the extent of the indebtedness which can be incurred by municipal corporations created under the laws of the state. By section 3, art. 11, of the constitution, it is provided that:

"No county or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."

Is it not clear beyond all question that, in cases like the one now before the court, if the plaintiff is allowed to enter up judgment against the defendant districts and to collect the full amount from either one, according to the ruling in Kennedy v. Derby Grange Independent School Dist., 48 Iowa, 189, it will result in imposing upon the districts a burden of indebtedness far beyond the constitutional limitation? For illustration, suppose a district can create indebtedness up to the sum of $15,000 under the constitutional limitation, and has in fact incurred indebtedness to the amount of $12,000. The original district is then divided into three independent districts, each containing an equal amount of territory and taxable property. If the indebtedness of the original district is equitably divided among the new districts, each will be burdened with $4,000 of inherited debt, but each can create a further indebtedness of $1,000 before passing the 5 per cent. limitation. If, however, under such circumstances, it is open to the creditor of the original district to take judgment in an action at law against the three independent districts for the full sum of $12,000, and collect it from one only, leaving that district to collect back from the other districts if it can, is it not clear that there has been imposed upon the one district a burden of indebtedness far in excess of the constitutional limit? Furthermore, it is well known that the collection of judgments against school districts must be enforced through the process of taxation, as they are not possessed of property subject to the ordinary process of execution, and therefore months and perhaps years must elapse between the rendition of the judgment and its final payment by means of funds raised by the levy and collection of a tax. During this period the judgment for the full amount will be of record against each one of the independent districts, and, being for an amount in excess of the debt-creating power of the several districts, neither district can lawfully create an additional indebtedness so long as the judgment remains unsatisfied upon the record, although, in fact, if the burden of this debt were equitably and properly proportioned among the several new districts, each one, in the supposed case, could lawfully incur an indebtedness to the amount of $1,000 in addi-

tion to its share of the inherited debt. The constitutional provision is intended to protect as far as possible the property within the municipal corporation from a burden of public debt in excess of the limit named. If, however, it is permissible to enter up judgments at law against two or more independent school districts which have been carved out of a pre-existing district for the full amount of the indebtedness of the original district, instead of their proportionate share, in cases wherein this amount exceeds 5 per cent. of the value of the taxable property of the independent districts, and to enforce collection against one only of the districts, the results will be as follows: (1) From the date of the rendition of the judgment the taxable property in each district will be affected by the amount of the judgment. (2) The amount of the judgment, as an enforceable debt against each of the independent districts, will reduce or destroy the debt-creating power of each district, thus materially affecting the rights of the district, and in many cases it will greatly cripple the district in the performance of the purposes of its creation. (3) The enforcement of the judgment against one or more of the independent districts imposes upon the property therein a burden far in excess of the constitutional limitation, and the wrong thus done is not met by the suggestion that, after being subjected to a burden in violation of the constitutional limit, relief may be had by the institution of proceedings in equity to compel contribution from the other independent districts. If the whole judgment is collected from one only of the defendants, the property owners are subjected to the burden which it is the purpose of the constitution to prohibit, and the court is not justified in imposing this burden upon the property and property owners of the one district upon the theory that the other districts may afterwards be required to come in and share the burden. In none of the cited cases decided by the supreme court of Iowa is the question of the proper mode of procedure discussed, when the facts are such that, if a judgment for the full amount of the indebtedness of the original districts is entered against all of the new independent districts, it will result in creating a burden on them in excess of the constitutional limit. Under the provisions of the Code of Iowa, if a case is commenced by ordinary proceedings (that is, at law), in which the facts, when pleaded, present an equitable issue, this issue may be tried by equitable methods; and therefore, under the state practice, it may well be that proceedings to enforce payment of bonds issued by a school district which has been subsequently divided into several independent districts may be properly brought at law, and then, if the issue presented by the defenses interposed are such as to make it a case of equitable cognizance, the suit will be proceeded with in that mode under the provisions of section 3435 of the Code, and the state court can give full protection to the rights of all the parties without requiring the institution of an original proceeding in equity. In the federal practice it is not permitted to entertain an issue in equity and to decree equitable relief in a case at law, and, therefore, when it is made to appear in a given action commenced at law that the rights of the parties require the exercise of equitable jurisdiction for their proper

enforcement and protection, it becomes the duty of the court to require the institution of the proper proceedings in equity, and to refuse to further proceed in the action at law. In Kennedy v. Derby Grange Independent School Dist., 48 Iowa, 189, the supreme court of Iowa held that a court of equity would have jurisdiction of an action brought to settle the respective liability existing between independent districts for the obligations of the original district; and no good reason is perceived why this apportionment of liability should not be first made, before a court is justified in awarding a judgment against the several independent districts, when it is apparent that, if judgment is entered for the whole amount of the indebtedness owing by the original district, it will cast a burden upon the several independent districts far in excess of the constitutional limit. This apportionment cannot be properly made in a trial at law before a jury, but can only be reached through a proceeding in equity wherein the court will ascertain and decree the amount due the creditor from the original district, and will then apportion and decree the parts of this sum that are chargeable against each of the several independent districts.

The conclusion reached in each of the cases before the court is that the action at law cannot be maintained, but that relief must be sought by suits in equity. If the parties desire to take the ruling of the appellate court upon this question before instituting suits in equity, an entry of dismissal can be made in one of the cases, and the others can be continued, awaiting the decision of the court of appeals in the case submitted to it.